No. 25-40247

IN THE

# United States Court of Appeals for the Fifth Circuit

RICHARD ANTHONY HEROD,
*Plaintiff–Appellee*,

v.

ERIC GUERRERO, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION.

*Defendant–Appellant*.

On Appeal from the United States District Court
for the Southern District of Texas, Galveston Division
Civil Action No. 3:15-cv-0338

## RESPONSE IN OPPOSITION TO PETITION FOR REHEARING EN BANC


KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division

JOSEPH P. CORCORAN*
Deputy Chief
Criminal Appeals Division
State Bar No. 00793549
*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
joseph.corcoran@oag.texas.gov

*Counsel for Defendant–Appellant*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

*Counsel for Defendant–Appellant*
Joseph P. Corcoran
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL OF TEXAS

*Defendant–Appellant*
Eric Guerrero
Director, Texas Department of Criminal Justice–
Correctional Institutions Division

*Plaintiff–Appellee*
Richard Anthony Herod

*Counsel for Plaintiff–Appellee*
Jonathan Landers
ATTORNEY AT LAW
917 Franklin Suite 300
Houston, TX 77002
JLanders.Law@gmail.com

s/ Joseph P. Corcoran
JOSEPH P. CORCORAN
Assistant Attorney General

## TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS .......................................i

TABLE OF CONTENTS .......................................................ii

TABLE OF AUTHORITIES ....................................................iv

STATEMENT OF THE ISSUES AND COURSE OF PROCEEDINGS... 1

INTRODUCTION ............................................................ 2

ARGUMENT AND AUTHORITIES ................................................ 3

I. The Legal Standard. .................................................. 3

II. The Panel Applied the Proper Legal Standard to Measure *Brady* and *Napue* Materiality. ........................................... 4

A. The panel did not use a sufficiency-of-the-evidence test. .......... 4

B. The panel's analysis is fully consistent with this Court's precedent. .......................................................... 10

II. Herod's Contention that the Panel Violated *Glossip v. Oklahoma* Has No Merit. ........................................................ 12

A. Herod's *Glossip* argument was forfeited because he never mentioned it to the panel. ............................................ 13

B. The Court should not overturn its longstanding practice based on Herod's interpretation of dicta from *Glossip* ...................... 14

CONCLUSION .............................................................. 17

CERTIFICATE OF SERVICE .................................................. 19

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT .... 19

ELECTRONIC CASE FILING CERTIFICATIONS ............................... 20

## TABLE OF AUTHORITIES

### Cases

*Banks v. Thaler*, 583 F.3d 295 (5th Cir. 2009) .................... 10, 11, 12, 16

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................. 1

*FDIC v. Massingill*, 30 F.3d 601 (5th Cir. 1994) .................................. 13

*Floyd v. Vannoy*, 894 F.3d 143 (5th Cir. 2018) ....................................... 4

*Garrett v. Lumpkin*, 96 F.4th 896 (5th Cir. 2024) ................................ 15

*Glossip v. Oklahoma*, 604 U.S. 226 (2025)................................ 12, 13, 14

*Gonzalez v. S. Pac. Transp. Co.*, 773 F.2d 637 (5th Cir. 1985)............ 3, 4

*Herod v. Guerrero*, 2026 WL 1419381 (5th Cir. May 20, 2026)................ 1

*Kyles v. Whitley*, 514 U.S. 419 (1995) ............................................... 5, 12

*LaCaze v. Warden La. Corr. Inst. for Women*, 645 F.3d 728 (5th Cir. 2011)
........................................................................................................ 5

*Lambrix v. Singletary*, 520 U.S. 518 (1997)........................................... 10

*Miller v. Dretke*, 404 F.3d 908 (5th Cir. 2005) ........................................ 5

*Mullis v. Lumpkin*, 70 F.4th 906 (5th Cir. 2023) ................................. 15

*Murphy v. Davis*, 901 F.3d 578 (5th Cir. 2018) ....................................... 9

*Napue v. Illinois*, 360 U.S. 264 (1959) ..................................................... 1

*Ohio v. Clark*, 576 U.S. 237 (2015) ....................................................... 17

*Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003) .......................................16

*Schlup v. Delo*, 513 U.S. 298 (1995).......................................................16

*Shinn v. Ramirez*, 596 U.S. 366 (2022)....................................................9

*U.S. Bank Nat. Ass'n v. Verizon Communications, Inc.*, 761 F.3d 409 (5th Cir. 2014).............................................................................15

*United States v. Am. Foreign S.S. Corp.*, 363 U.S. 685 (1960).................3

*United States v. Brumfield*, 89 F.4th 506 (5th Cir. 2023) ........................4

*United States v. Sipe*, 388 F.3d 471 (5th Cir. 2004) ...............................11

*United States v. Sutherland*, 428 F.2d 1152 (5th Cir. 1970)..................13

**Statutes**

Tex. Code Crim. Proc. Art. 11.07, §4........................................................1

**Rules**

5th Cir. R. 40 IOP...............................................................3, 10

5th Cir. R. 40.2.1 .....................................................................3

Fed. R. App. P. 40(b)(2) ..........................................................3

## STATEMENT OF THE ISSUES AND COURSE OF PROCEEDINGS

Texas prisoner Richard Herod filed a federal habeas petition to challenge his state judgments of conviction for aggravated robbery and aggravated sexual assault, raising claims under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959). ROA.383-473. The Texas Court of Criminal Appeals (TCCA) had earlier refused to consider the merits of both claims after finding they were procedurally barred. ROA.4196 (citing Tex. Code Crim. Proc. Art. 11.07, §4(a)–(c)). The district court ultimately found that Herod established cause and prejudice to overcome the default and then conditionally granted federal habeas relief after finding violations of both *Brady* and *Napue*, and Defendant–Appellant (Director) appealed. A panel of this Court reversed the habeas grant after concluding that both claims "were procedurally defaulted in state court" and that Herod "failed to show prejudice to overcome the default." *Herod v. Guerrero*, No. 25-40247, 2026 WL 1419381, at *1 (5th Cir. May 20, 2026), App.1–10.[1] Herod filed a petition

[1] "App." refers to the appendix Herod attached to his rehearing petition, which contains the panel's opinion.

for rehearing en banc, *see* Pet. 1–20, and the Court asked the Director to file this response.

At this juncture the issues are as follows:

1. Does the panel's decision conflict with any decision of this Court, or any decision of the United States Supreme Court, or any authoritative decision of another United States court of appeals; or

2. Does the panel's decision involve one or more questions of exceptional importance?

## INTRODUCTION

At base, Herod seeks en banc rehearing for two reasons. First, he says, the panel erroneously used a "sufficiency-of-the-evidence" test to analyze *Brady* and *Napue* materiality. However, the panel agreed with him that evidentiary sufficiency was an improper measure and explicitly applied the correct test. Necessarily then, Herod's real complaint is that the panel failed to explicitly mention (and debunk) his repeated efforts to substitute the state habeas court's factual interpretation of the evidentiary record with his own. This wasn't error because the state court fact-finding was entitled to a presumption of correctness that Herod has never attempted to overcome. Second, Herod says the "panel failed to follow the Supreme Court's supposed admonition that reviewing courts

must consider all evidence when conducting materiality analysis" under *Brady* and *Napue*. The Court should reject this argument both because he never raised it to the panel and because his supporting citations are dicta.

## ARGUMENT AND AUTHORITIES

### I. The Legal Standard.

Federal Rule of Appellate Procedure 40(a explains that "rehearing en banc is not favored." *See also* 5th Cir. R. 40.2.1. Litigants seeking rehearing en banc must show that: (1) en banc consideration is necessary to maintain "uniformity of the court's decisions"; (2) the panel's decision conflicts with a Supreme Court decision or another circuit's authoritative opinion; or (3) the proceeding involves a question of "exceptional importance." Fed. R. App. P. 40(b)(2). "Alleged errors in the facts of the case . . . or in the application of correct precedent to the facts of the case are generally matters for panel rehearing but not for rehearing en banc." 5th Cir. R. 40 IOP; *see also Gonzalez v. S. Pac. Transp. Co.*, 773 F.2d 637, 641 (5th Cir. 1985).

"[E]n banc courts are the exception, not the rule." *United States v. Am. Foreign S.S. Corp.*, 363 U.S. 685, 689 (1960) (superseded in statute). "They are convened only when extraordinary circumstances exist that

call for authoritative consideration and decision by those charged with the administration and development of the law of the circuit." *Id.*; *accord Gonzalez*, 773 F.2d at 641.

As the Director will show, this Court should not grant rehearing en banc because Herod fails every one of the requirements enumerated in Fed. R. App. P. 40(b)(2)(A)–(D).

## II. The Panel Applied the Proper Legal Standard to Measure *Brady* and *Napue* Materiality.

### A. The panel did not use a sufficiency-of-the-evidence test.

Herod baldly asserts that the panel erroneously used a "sufficiency-of-the-evidence" test to analyze *Brady* and *Napue* materiality. Pet. 16. Because Herod fails to identify any error in the panel decision, the Court should deny this petition.

To begin, the panel *agrees* with Herod that materiality "is 'not a sufficiency of the evidence test.'" App.5 (quoting *United States v. Brumfield*, 89 F.4th 506, 516 (5th Cir. 2023)). So too, the panel *agrees* with Herod that it must "evaluate the materiality of [the] allegedly suppressed evidence 'collectively, not item by item.'" *Id.* (quoting *Floyd v. Vannoy*, 894 F.3d 143, 162 (5th Cir. 2018)). The panel also agrees that the correct legal measure is whether there is "reasonable probability

that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." App.9 (quoting *Miller v. Dretke*, 404 F.3d 908, 914 (5th Cir. 2005)). Finally, the panel identifies the ultimate test as being "whether Herod 'received a fair trial'—one 'resulting in a verdict worthy of confidence in the absence of the favorable evidence.'" App.5. (quoting *LaCaze v. Warden La. Corr. Inst. for Women*, 645 F.3d 728, 736 (5th Cir. 2011)). In sum, the panel applied Herod's proposed legal standard when it found that he failed to demonstrate materiality.

To be sure, Herod is correct that "[a] defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." Pet. 16–17 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434–35 (1995)). But contrary to Herod's assertion that "the panel did exactly what" *Kyles* forbids by performing "a sufficiency of the evidence test *without considering the* [suppressed] *DNA evidence*[,]" Pet. 16 (emphasis and alteration added), the panel *did* consider the effect (if any) that the "suppressed" DNA evidence had on the evidence supporting guilt. Indeed, the panel expressly noted that it was doing so. *See* App.9 ("Although the

defense challenged the state's other evidence of guilt, *the allegedly suppressed evidence and falsified testimony* does not put the whole case in such a different light as to undermine confidence in the verdict.") (emphasis added); *see also id*. ("Neither the *allegedly suppressed scientific evidence* (supporting Herod's *Brady* claim) nor Browder's *allegedly false DNA-related testimony* (supporting Herod's *Napue* claim) infected Herod's "entire trial with error of constitutional dimensions.") (emphasis added). The panel also conducted a detailed examination of the trial evidence in relation to the allegedly suppressed evidence and finally concluded that "Herod has not shown prejudice sufficient to overcome the procedural bar." *Id*.[2]

Despite the forgoing—and despite the panel's explicit affirmation that it was not performing a sufficiency-of-the-evidence inquiry, Herod insists that it did. To support this remarkable assertion, Herod cites approximately thirteen negative evidentiary inferences that he has constructed from the record that he believes weaken the inculpatory power of the non-DNA evidence, and which he says the panel failed to

[2] The panel devoted approximately four-pages—and about 1,200 words—to this analysis. *See* App.6–9.

consider. *See* Pet. 16. Of course, Herod ignores several evidentiary inferences the panel *did* reject. *Compare* Appellant Br. at 14 (contending the defense DNA expert "did not dispute that Herod could not be excluded from eight of the sixteen locations"), *with* App.6 (finding that defense DNA expert testified that Herod "should be excluded . . . at the remaining eight markers"). And while the panel did not specifically *mention* (and debunk) every one of Herod's countless (and often exaggerated) evidentiary "reconstructions" within the text of its unpublished opinion, this does not mean it did not consider them.

The panel's approach makes sense given Herod's farfetched efforts to weaken the inculpatory value of nearly all the non-DNA trial evidence. Indeed, in all but two of Herod's thirteen examples, he plainly relies entirely on evidence *actually introduced* at trial to impeach a given witness—which the jury plainly and reasonably rejected.[3] *See* Pet. 1–10.[4]

---

[3] Herod only twice mentions extra-record evidence in his en banc petition. *See* Pet. 3 ("Herod presented the post-conviction courts with proof that he did not eat the SIM card from the x1537 phone."); *see also id.* at 5 (describing a postconviction affidavit from George Sanford).

[4] In this section of his rehearing petition, Herod often cites the *district court's* view of the facts from the trial record. *See* Pet. 1–10 (showing that Herod repeatedly relies on pages 917-80 of the record on appeal, which is the district court's memorandum order). Given the panel's rejection of all or most of the

And because this impeachment material was in the trial transcript, the panel necessarily considered it when it interpreted and weighed the evidence supporting guilt in the first step of its analysis.

Finally, Herod neglects to mention the state habeas trial court's extremely detailed findings of historic fact, which the panel independently confirmed and explicitly incorporated into its analysis. *See* App.7–8 ("We independently agree with the state habeas trial court's conclusion that Herod was 'only minimally connected' to 'the white shirt,' even under the allegedly erroneous evidence."). These state court fact findings go into greater detail than the panel's opinion and thoroughly rebut Herod's view of the evidentiary record. *See* ROA.5364-97.[5] Critically, these findings enjoy a powerful presumption of correctness under 28 U.S.C. § 2254(e)(1), which "applies to factual determinations made by a State court," without "distinction between [the] trial and appellate courts. . . . even if the state appellate court reached a different legal conclusion when applying the law to those facts" so long as the trial

---

district court's evidentiary analysis, the Court should look to the district court's underlying record citations.

[5] The state court findings relevant to Herod's *Brady* and *Napue* claims are in approximately 80 separate paragraphs and cover approximately 30 pages. ROA.5364-97.

court's fact findings are "not directly inconsistent with the TCCA's dismissal." *Murphy v. Davis*, 901 F.3d 578, 595 (5th Cir. 2018) (internal quotation marks omitted). While the panel could have matched that level of detail in its own analysis, no rule of opinion writing required it to do so, especially in an unpublished opinion.

Herod has never attempted to rebut this presumption by clear and convincing evidence, instead asking this Court to relitigate his criminal trial with reference to evidence and inferences the jury already rejected—which is altogether improper. *See Shinn v. Ramirez*, 596 U.S. 366, 390 (2022) ("Such intervention is also an affront to the State and its citizens who returned a verdict of guilt after considering the evidence before them. Federal courts, years later, lack the competence and authority to relitigate a State's criminal case.").

In sum, Herod objects to the panel's organizational and stylistic approach to analyzing a properly stated rule of law. He seemingly seeks en banc review because he doesn't trust that the panel fully considered each of his arguments. But Herod's naked supposition can never overcome the foundational presumption that the panel acted in good-faith, and that it knows the law and properly applied it in its decision-

making. *See Lambrix v. Singletary*, 520 U.S. 518, 532 n.4 (1997). Finally, Herod's view is fundamentally incompatible with en banc review, which is intended to resolve conflicts and settle circuit law on matters of overriding significance—and not to grade the work of individual panels, or question whether the panel really did what it said it did. *See* 5th Cir. R. 40 IOP (rehearing en banc is "an extraordinary procedure that is intended to bring to the attention of the entire court an error of exceptional public importance or an opinion that directly conflicts with prior Supreme Court, Fifth Circuit, or state law precedent.").

### B. The panel's analysis is fully consistent with this Court's precedent.

In *Banks v. Thaler*, a panel of this Court rejected the argument Herod makes here. 583 F.3d 295, 321 (5th Cir. 2009).[6] Like the panel here, the *Banks*' panel devoted much of its attention on the inculpatory strength of the trial evidence *without reference* to the suppressed evidence.[7] *Id*. at 314–21. This analysis led the *Banks*' panel to conclude

[6] Judges Barksdale and Higginbotham made up the panel majority, and Judge Dennis dissented. *See Banks*, 583 F.3d at 299.

[7] In *Banks*, prosecutors withheld the transcript of a pre-trial interview given by Cook, a key prosecution witness that "could have been used to attempt to impeach Cook with respect to his trial testimony that, inter alia, he had not spoken pre-trial to anyone about his testimony." 583 F.3d at 311.

that "even if Cook's testimony was *completely* discredited by the jury, the jurors still had an abundance of other evidence with which to find *Banks* guilty beyond a reasonable doubt." *Id*. at 321 (emphasis in original).

Like Herod, a dissenting judge "strongly criticize[d]" the panel's decision to do so "as merely applying a 'sufficiency-of-evidence test.'" *Id*. However, the *Banks*' panel disagreed, explaining that this was "only the starting point" for its ultimate materiality determination. *Id*. More specifically, the panel explained that performing a "thorough examination of the trial evidence," is a necessary "starting point for assessing" the materiality of the suppressed evidence. *Id*. (citing *United States v. Sipe*, 388 F.3d 471, 479 (5th Cir. 2004)). The approach facilitated its eventual evaluation of the "materiality [of the suppressed evidence] by exploring the extensive corroboration" of the other inculpatory testimony, "and by placing that testimony into context with all of the other evidence supporting Banks' conviction." *Banks*, 583 F.3d at 321 (alterations added). Only then could the Court accurately move to the final step of its analysis and consider whether the suppressed "'evidence could [not] reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id*. at 321–22 (quoting

*Kyles*, 514 U.S. at 435). Finally, the *Banks*' panel performed the second step by considering the force and effect of the suppressed evidence in relation to the weight it earlier assigned the trial evidence—concluding (1) there was no reasonable probability of a different result; and (2) the suppressed evidence did not undermine confidence in the outcome of the trial. *Id*. at 322–32.

This is exactly what the panel did here by first thoroughly examining the inculpatory strength of the trial evidence on its own, and second, considering the effect that "the allegedly suppressed evidence and falsified testimony" had on the jury's verdict. App.8.

## II. Herod's Contention that the Panel Violated *Glossip v. Oklahoma* Has No Merit.

Herod also contends that the panel erred because courts are "not limited to facts which were before the jury at trial" when conducting the materiality inquiry under *Brady* and *Napue*. Pet. 14 (quoting *Glossip v. Oklahoma*, 604 U.S. 226, 251 (2025)). But Herod failed to present this argument to the panel. And in any event the dicta he cites from *Glossip* does not override this Court's consistent precedent.

### A. Herod's *Glossip* argument was forfeited because he never mentioned it to the panel.

Although *Glossip* was decided before the district court granted habeas relief,[8] Herod never mentioned this argument to the panel. *See generally*, Appellee Br. (5th Cir. Oct. 8, 2025) (showing that Herod made no mention of *Glossip*). He now seeks rehearing by suggesting the panel erred for failing to consider an argument he never pressed. But the time for presenting new, substantive arguments to this Court has passed. *United States v. Sutherland*, 428 F.2d 1152, 1158 (5th Cir. 1970) ("Having tried and appealed its case on one theory, an unsuccessful party may not then use a petition for rehearing as a device to test a new theory."); *see FDIC v. Massingill*, 30 F.3d 601, 605 (5th Cir. 1994) (stating that the court "will not entertain those thorny questions presented for the first time in a[] petition for rehearing") (internal quotation marks omitted). The Court should deny en banc rehearing.

[8] *Glossip* was decided on February 25, 2025, *see Glossip*, 604 U.S. at 226, about a month before the district court granted habeas relief, *see* ROA.981.

### B. The Court should not overturn its longstanding practice based on Herod's interpretation of dicta from *Glossip*

The Court should also deny en banc rehearing because Herod reads a sweeping change of the law into a single paragraph of dicta in *Glossip*. To be sure, in an effort to "reinforce . . . [its] conclusion that the *Napue* error . . . prejudiced the defense[,]" the *Glossip* majority very briefly referenced several documents that weren't available to the jury, and which apparently had not been suppressed by the prosecution. *Glossip*, 604 U.S. at 251. The majority justified its approach by observing that when it conducts a "cumulative evaluation" of materiality, it considers "all the evidence, whether or not that evidence is before the Court in the form of an independent claim for relief[.]" *Id.*

But this was dicta because the majority had already found a *Napue* violation before it mentioned the additional extra-record material. *See Glossip*, 604 U.S. at 250 ("Although the prosecution's failure to correct Sneed's false testimony was a material *Napue* violation on its own, additional conduct by the prosecution further undermines confidence in the verdict."). Necessarily then, this part of the opinion "could have been deleted without seriously impairing the analytical foundations of the

holding[.]" *U.S. Bank Nat. Ass'n v. Verizon Communications, Inc.*, 761 F.3d 409, 427–28 (5th Cir. 2014), *as revised* (Sept. 2, 2014) (quotation omitted). And being peripheral, there are good reasons to think that the passage "may not have received the full and careful consideration" by the Court. *Id.* (quotation omitted). To be sure, this Court treats Supreme Court dicta "with greater reverence than dicta emanating from a fellow circuit-court panel" at least where that dictum is "recent and detailed." *Garrett v. Lumpkin*, 96 F.4th 896, 902 n.4 (5th Cir. 2024). Even so, the Court will sometimes limit the effect of Supreme Court dicta, even in federal habeas appeals, particularly when the dicta cuts against existing precedent and would represent a sweeping change to the practice of this circuit. *E.g.*, *Mullis v. Lumpkin*, 70 F.4th 906, 910 (5th Cir. 2023) (refusing to allow Supreme Court dictum to override the application of the rule of orderliness). It should do so here.

The sheer breadth of Herod's present effort evinces the risk of converting this part of *Glossip* into a holding. If Herod is correct, there could be no limit to the amount or kind of extra-record evidence that a habeas petitioner could use to show prejudice under *Brady* and *Napue*. Every materiality assessment would morph into a complete retrial in

which the petitioner is permitted to impeach every prosecution witness with "evidence" never before the jury—a rule that contravenes this Court's precedent. *See Banks*, 583 F.3d at 313 ("[W]e cannot allow our assessment [of *Brady* materiality] to morph into a complete re-trial of this case[.]").

Moreover, Herod's view conflates a showing of "prejudice" to excuse procedural default with proof of "actual innocence" to excuse the same default under the miscarriage of justice exception.[9] *See Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003) (describing the different standards). The miscarriage of justice exception already permits—and actually *requires*—a petitioner to submit new and reliable evidence that was *not presented at trial*. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). If Herod's interpretation is accepted, then habeas petitioners would never need to invoke the miscarriage of justice exception to excuse default. Finally, Herod is again changing his legal arguments. He has always relied on a showing "prejudice" to excuse his default; he has never attempted to

[9] Herod has always relied on "prejudice" to excuse his default; he has never attempted to demonstrate "actual innocence" under the miscarriage of justice exception. *See* ROA.428-29; Appellee Br. at 53–55.

demonstrate "actual innocence" under the miscarriage of justice exception. *See* ROA.428-29; Appellee Br. at 53–55.

It is doubtful that the Supreme Court meant to overturn decades of this Circuit's habeas precedent in a single paragraph that was unnecessary to the Supreme Court's ruling. Until the Supreme Court clarifies that it intended this analysis to upend longstanding habeas law, the Court should treat the passage as dicta and continue to apply its longstanding rules that sensibly limit efforts to completely retry state convictions in the name of materiality. *See Ohio v. Clark*, 576 U.S. 237, 253 (2015) (Scalia, J., concurring in judgment) ("Dicta on legal points, however, can do harm, because though they are not binding they can mislead.").

## CONCLUSION

Herod's petition for rehearing en banc does not satisfy Rule 40(b)(2)'s standard and should be denied.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General for
Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division

s/ Joseph P. Corcoran
JOSEPH P. CORCORAN*
Deputy Chief,
Criminal Appeals Division
State Bar No. 00793549
*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
Joseph.corcoran@oag.texas.gov

COUNSEL FOR DEFENDANT–APPELLANT

## CERTIFICATE OF SERVICE

I do hereby certify that on June 22, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to all parties.

s/ Joseph P. Corcoran
JOSEPH P. CORCORAN
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1. This document complies with the type-volume limit of Fed. R. App. P. 40(d)(3)(A) because, excluding the parts of the document exempted by Rule 32(f), it has 3,410 words.

2. This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)−(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 MSO, in Century Schoolbook font, 14 points.

s/ Joseph P. Corcoran
JOSEPH P. CORCORAN
Assistant Attorney General

## ELECTRONIC CASE FILING CERTIFICATIONS

I do hereby certify that: (1) all required privacy redactions have been made; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus scanning program and is free of viruses.

s/ Joseph P. Corcoran
JOSEPH P. CORCORAN
Assistant Attorney General